# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **8:05CR276** |
| vs. ) | |
| ) | **REPORT AND** |
| **ANTHONY D. HARRIS,** ) | **RECOMMENDATION** |
| ) | |
| **Defendant.** ) | |

This case is before the court on the motions (#9 & #11) of defendant Anthony D. Harris to suppress evidence obtained as a result of a search of his vehicle and person following a traffic stop, and to suppress evidence obtained during the search of 4817 North 66th Street, Apt. #131. The motions were heard on September 16, 2005. The transcript of the hearing (#18) was filed on September 29, 2005, at which time the motions were deemed submitted.

In Filing #9, Harris contends the evidence seized following the traffic stop should be suppressed because the stop occurred absent reasonable suspicion or probable cause.[1]

In Filing #11, Harris moves for the exclusion of any and all evidence obtained during the May 10, 2005 search of 4817 North 66th Street, Apt. #131. The search occurred pursuant to a warrant; however, Harris alleges that while the affidavit and application requested an anticipatory search warrant, the search warrant as issued did not authorize an anticipatory

---

[1]At the hearing on motion, Harris withdrew his claim that his vehicle was unlawfully searched without probable cause or consent.

search. Harris also claims the affidavit and application do not contain sufficient facts to find probable cause, and that the *Leon* good-faith exception does not apply. Additionally, Harris moves for the suppression of telephone numbers obtained from his cell phone.

For the reasons discussed below, I recommend that both motions be denied.

## FACTUAL BACKGROUND

Jason Scott testified he is currently employed by the Nebraska State Patrol working with the Commercial Interdiction Unit of the drug division where his duties include the disruption of the flow of narcotics in Nebraska. On May 6, 2005 he received a call from an investigator from Tempe, Arizona who informed him that a couple of DHL packages containing 40 lbs. of marijuana were being shipped from Arizona to Christina Gaskin at 4817 North 66th Street, Apt. #131 in Omaha, Nebraska (4:6-22).

Scott testified that on May 9, 2005 during a second conversation with the Tempe investigator, he was informed that a male party had telephoned and asked about the whereabouts of the packages and that the packages were going to be overnighted to Omaha so Scott could attempt a controlled delivery (5:9-20). After the second conversation, Scott received the packages, tested the contents (16:8-12), and determined that it was marijuana (5:21-6:10). After examining the packages, he drafted an affidavit and application for the issuance of a search warrant and a proposed search warrant (Ex. 1) (6:11-7:6). The affidavit and application states in part:

The complaint and affidavit of Investigator Scott of the Nebraska State Patrol, on this 10th day of May, 2005, who being first duly sworn, upon oath says:

Your affiant is a narcotics investigator for the Nebraska State Patrol. Your affiant has been employed with the Nebraska State Patrol since September, 1998, and assigned to narcotics investigation since January, 2004. Your affiant has received training from the Nebraska Law Enforcement Training Center, and DEA in the identification and recognition of illegal drugs, including but not limited to Marijuana, Cocaine, Methamphetamine, and Heroin. Your affiant has participated in numerous narcotic investigations related to the transportation, distribution, and sales of illegal narcotics. Your affiant has been involved in over fifty investigations relating to the distribution of controlled substance.

That he has just and reasonable grounds to believe, and does believe, that there is concealed or kept hereinafter described, the following property, to-wit: 2 brown cardboard boxes #1 measures 22x14x12 and #2 measures 22x14x12. Box #1 has an air bill # 18155426645 and a shipping label addressed to Christina Gaskin at 4817 N 66th St Apt #131 Omaha, Ne. 68104 and a return address of IBM 7100 Highway PKWY Smyrna, GA. 30082. Box #1 weighs 9486 grams. Box #2 has the same shipping and return address and an air bill # 18155426741. Box #2 weighs 9359 grams. Marijuana, cocaine, heroin, methamphetamine, and/or other controlled substances and paraphernalia associated with the use, possession, manufacture, and/or distribution of marijuana, cocaine, heroin, methamphetamine, and any other controlled substances. Records, money, ledgers, money orders, address books, and/or papers reflecting names, addresses, telephone numbers of customers, associates, and co-conspirators, plus receipts indicating a conspiracy to sell marijuana, cocaine, heroin, methamphetamine, and any other controlled substances.

That said property is concealed or kept in, on, or about the following described place or person, to-wit: 4817 N 66th St. #131, Omaha, Nebraska. A brick three story Apartment complex, a multi family dwelling with Brown trim and black and gold numbers 4817 above the entrance doors, and white numbers on an interior door that read 131 located at 4817 N 66th Apt #131 St in Omaha, Nebraska.

That said property is under the control or custody of Christina Gaskin DOB 1-4-72.

That the following are the grounds for issuance of a search warrant for said property and the reasons for his belief, to-wit: On May 6th, 2005 your affiant received information from Officer Rouget #15474 of the Tempe, Arizona Police Department that there were 2 packages being shipped to Omaha, Nebraska containing suspected marijuana. DHL employees were suspicious of the packages being shipped from Tempe and opened the packages. After opening the packages the employees discovered a large bundle that was heavily duct taped, which they believed to be illegal contraband. DHL employees determined that the illegal contraband was consistent with marijuana. DHL then contacted Officer Rouget and notified him of there [sic] findings. Rouget due to his training and experience confirmed that it was indeed marijuana. Rouget then contacted members of the Nebraska State Patrol Commercial Interdiction Unit. Based on the information received from Rouget arrangements were made to have the packages shipped to Omaha and held for members of the Nebraska State Patrol. On May 10th, 2005 your affiant received the above described packages from employees at the Omaha DHL Air Cargo office and conducted an inventory search for evidentiary purposes. Box #1 had a large bundle wrapped heavily in Gray Duct tape containing a green leafy substance that field tested positive for marijuana. Bundle #2 also weighed approximately 20 lbs. Both packages were held in Nebraska State Patrol custody for a controlled delivery.

Your affiant believes that the current resident at the address is Christina Gaskin DOB 1-4-72. A criminal history check of those individuals revealed that Gaskin has previous arrests in Douglas County, Nebraska. During the booking process of those arrests Gaskin gave the address of 4817 N 66th St. #131 as her home address.

Your affiant is aware that the above described packages and contents will be delivered to 4817 N 66th St. #131. Omaha, Nebraska. Upon the delivery your affiant requests the validation of a warrant for the search of 4817 N 66th St. #131. Omaha, Nebraska, and the person of Christina Gaskin DOB 1-4-72

The following search warrant, drafted by Scott, was issued by the Douglas County Court:

TO NEBRASKA STATE PATROL:  Investigator Scott

This matter came on for hearing on May 10th, 2005, upon the sworn application and affidavit for issuance of a search warrant of Investigator Scott, Nebraska State Patrol, and the Court, being fully advised in the premises finds as follows:

That the Court has jurisdiction of this matter pursuant to sections 29-712 through 29-828, Nebraska Revised Statutes, 1943, as amended.

That based upon the sworn affidavit and application for issuance of a search warrant of Investigator Scott, Nebraska State Patrol, dated May 10th, 2005, that there is probable cause to believe that concealed in 4817 N 66th St. #131 Omaha, Nebraska.  A brick three story Apartment complex, a multi family dwelling with Brown trim and black and gold numbers 4817 above the entrance doors, and white numbers on an interior door that read 131 located at 4817 N 66th Apt. #131 St. in Omaha, Nebraska.

to-wit: 2 brown cardboard boxes #1 has an air bill # 18155426645 and a shipping label addressed to Christina Gaskin at 4817 N 66th St Apt #131 Omaha, Ne. 68104 and a return address of IBM 7100 Highland PKWY Smyrna, GA 30082. Box #2 has the same shipping and return address and an air bill # 18155426741. Marijuana, cocaine, heroin, methamphetamine, and/or other controlled substances and paraphernalia associated with the use, possession, manufacture, and/or distribution of marijuana, cocaine, heroin, methamphetamine, and any other controlled substances. Records, money, ledgers, money orders, address books, and/or papers reflecting names, addresses, telephone numbers of customers, associates, and co-conspirators, plus receipts indicating a conspiracy to sell marijuana, cocaine, heroin, methamphetamine, and any other controlled substances.

And, if found, to seize and deal with the same as provided by law, and to make return of this warrant to me within ten days after the date hereof.

YOU ARE, THEREFORE, ORDERED, with the necessary proper assistance, to search the afore described location and/or person, for the purpose

of seizing the before described property, and if found, to seize and deal with the same as provided by law, and to make return of this warrant to me within ten days after the date thereof.

> IT IS FURTHER ORDERED, that execution of the Search Warrant be forthwith during DAY TIME HOURS with KNOCK or ANNONCEMENT [sic].

> IT IS FURTHER ORDERED, that Investigator Scott, Nebraska State Patrol, make return of this Search Warrant to me within ten days after the date hereof.

> GIVEN under my hand this 10 day of May 2005.

> > s/ Joseph Caniglia
> > County Court Judge

Scott testified that on May 10, 2005 he took the affidavit and application to a Nebraska State judge, and after reviewing the document, the judge signed the search warrant. Scott admits that while the application and affidavit contain anticipatory language, the warrant does not, as he was unaware the anticipatory language had to be in both the affidavit and the search warrant (7:7-8:20). Scott noted that when he received the signed search warrant, he believed he had the authority to search the apartment (8:24-9:2).

Scott testified that after the warrant was signed, he conducted a briefing with the officers who would participate in the execution of the warrant, including Investigator Lutter, who was to deliver the packages. Scott added that if the packages had not been delivered, he would not have executed the search warrant (9:9-24). Following the briefing and after he

was informed that the packages had been delivered, Scott executed the warrant and secured the apartment (9:25-10:8).

Richard Lutter testified that he is employed by the Nebraska State Patrol as a narcotics investigator assigned to the Commercial Interdiction Unit. On May 10, 2005, he delivered two DHL packages to 4817 North 66th Street, Apt. #131 in Omaha, Nebraska (21:8-23). While the packages were addressed to Christina Gaskin, he delivered the packages to a male who identified himself as Steven Jackson and signed for the packages. Lutter later determined Jackson was, in fact, the defendant Anthony Harris (21:24-22:13). After the packages were delivered, Lutter exited the apartment complex, but stayed in the area as part of surveillance (22:25-26:4). Less than a minute after he exited the building Lutter observed Harris leave the building, enter a Ford Expedition, and drive onto Fowler before turning southbound onto 66th Street, where the vehicle was stopped by law enforcement (23:17-24:18).

Lutter testified that following the stop of Harris' vehicle, he returned to the apartment where he observed the boxes he had delivered earlier, in an unopened condition. He also observed and seized $20,000 in United States currency from a safe in the apartment (24:22-25:5; 27:12-18).

On cross-examination Lutter testified that when he delivered the packages he was aware the apartment was in the name of Christina Gaskin and that he had no idea who was going to be opening the door (28:1-7). He admitted that he did not know if Harris had

knowledge of the contents of the packages (28:19-29:2). Lutter also admitted that during the search of the apartment he did not seize any venue items pertaining to Harris or containing Harris' name, and he had never received any information that Harris lived in the apartment (29:3-11).

On cross-examination Lutter testified that prior to the traffic stop he did not know whether the packages were still in the apartment, but based upon his training and experience he knew packages can be opened and undetermined amounts removed, and until a package is actually discovered he would have no idea or knowledge if anything had been removed (29:23-30:4).

On redirect examination Lutter testified that when Harris received the package, he indicated his name was Steven Jackson and he signed "Steven Jackson" on the delivery receipt. He admitted that the first time he saw Harris was at the apartment and that he had no previous knowledge Harris was involved with the packages (30:22-31:7).

Steven Rasgorshek testified he is currently employed with the Nebraska State Patrol as a trooper and that on May 10, 2005 at the direction of Lutter, he stopped a Ford Expedition at 66th and Ames (33:14-22). Following the stop he removed Harris from the vehicle, handcuffed him, and placed him under arrest (34:4-23). The vehicle was searched and the keys to the vehicle, along with a cellular telephone were seized and turned over to Investigator Burns (36:1-16).[2]

---

[2]Scott testified that he believed the cellular telephone was turned over to Sergeant Doggett, who downloaded information including stored numbers and recent calls (14:14-25).

On cross-examination, Rasgorshek testified that he stopped the vehicle because he was directed to stop it and that prior to his search of the vehicle he had not received permission to search the vehicle (38:2-3).

On redirect examination Rasgorshek testified that prior to stopping the vehicle he received a transmission from Lutter that an individual had picked up the packages, left the apartment, gotten into a Ford Expedition, and was leaving the parking lot (38:20-39:3). On recross examination, Rasgorshek testified that he placed Harris under arrest for receiving the package and searched the vehicle incident to the arrest (39:7-13).

Jason Scott testified on recall that he received the keys taken from the Harris vehicle, and that he was able to determine the keys would unlock and lock the apartment door and one of the keys would open the safe (40:10-24).

## LEGAL ANALYSIS

### A. Search of the Apartment

#### 1. Standing

As a threshold matter, the defendant must demonstrate that he has standing to challenge the search of the apartment.

> Fourth Amendment rights are personal and cannot be asserted vicariously. *See United States v. Gomez*, 16 F.3d 254, 256 (8th Cir. 1994). A defendant who "fails to prove a sufficiently close connection to the relevant places or objects searched ... has no standing to claim that they were searched or seized illegally." *Id.* A defendant moving to suppress evidence has the burden of showing a legitimate expectation of privacy in the area searched. *See id.* "Factors relevant to the determination of standing include: ownership, possession and/or control of the area searched or item seized; historical use of

> the property or item; ability to regulate access; the totality of the circumstances surrounding the search; the existence or nonexistence of a subjective anticipation of privacy; and the objective reasonableness of the expectation of privacy considering the specific facts of the case." *Id*.

*United States v. Pierson*, 219 F.3d 803, 806 (8th Cir. 2000). In this case, no venue items pertaining to Harris or containing Harris' name were seized from the apartment. There is no evidence that Harris lived in the apartment. The issue of standing was not raised by either party. Based on testimony that keys taken from the defendant's vehicle would unlock the door to the apartment and would open the safe inside the apartment, the court will assume, without deciding, that the defendant has standing to contest the search of the apartment.

### *2. Anticipatory Warrant; Probable Cause*

Rule 41(a)(1) of the Federal Rules of Criminal Procedure permits the issuance of an "anticipatory" search warrant, i.e., one that is issued before the item to be seized has arrived at the place to be searched. Defendant contends the search of the apartment was illegal because the county court did not issue an anticipatory warrant as requested. The government counters that the warrant was executed only after the packages were delivered and all conditions precedent were satisfied. Even though the "anticipatory" language was not included within the warrant itself, the warrant was executed only after the probable cause had come to full fruition to search that apartment. (46:9-17).

First, I find that the county judge had a substantial basis for his probable cause determination in issuing the search warrant. *See United States v. Tagbering*, 985 F.2d 946, 949 (8th Cir. 1993) (citing *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). I further find that

the affidavit and application prepared by Investigator Scott established probable cause for the issuance of an anticipatory warrant.

The fact that this warrant did not expressly condition the search upon the controlled delivery of the DHL packages is not dispositive. The same argument was raised in *United States v. Tagbering*:

> Tagbering argues that the warrant was invalid because it did not expressly condition the search upon the controlled delivery nor state that the warrant would be void if delivery did not occur. We disagree. In the first place, we conclude that the search warrant, fairly construed, did contain this condition. Detective Scudder's affidavit stated that the warrant "will not" be executed until delivery of the package. The affidavit was submitted to and signed by Judge Ianonne as part of the warrant, and it was attached to the copies of the warrant the officers brought with them when they conducted the search. (Apparently, Tagbering did not ask to see the warrant before the officers entered his apartment.) "An affidavit may provide the necessary particularity for a warrant if it is either incorporated into or attached to the warrant.... [or] is merely present at the search." *Rickert v. Sweeney*, 813 F.2d 907, 909 (8th Cir. 1987) (citations omitted).
>
> Moreover, even if Scudder's affidavit was not incorporated into the warrant, it contained a representation to the issuing judge that the warrant would not be executed until the package was delivered and accepted. In such circumstances, we do not believe the Constitution requires that this limitation be written into the warrant itself. If the warrant is executed before the controlled delivery occurs, then suppression may well be warranted for that reason. *See United States v. Rey*, 923 F.2d 1217, 1221 (6th Cir. 1991). Here, of course, it is undisputed that the warrant was properly executed after the package was delivered to and accepted by Tagbering.

*United States v. Tagbering*, 985 F.2d at 950 (footnote omitted). *See also United States v. Moetamedi*, 46 F.3d 225, 228-229 (2d Cir. 1995) (anticipatory search warrant was not invalid on ground that conditions precedent to its execution were not stated in the warrant, where

-11-

they were clearly stated in affidavit and were actually satisfied before warrant was executed); *see contra, United States v. Grubbs*, 377 F.3d 1072 (9th Cir. 2004), *cert. granted*, 126 S. Ct. 34 (2005) (Officers' failure to present the affidavit designating the triggering events or conditions precedent to the operability of an anticipatory search warrant rendered the warrant constitutionally invalid and the search illegal).

In this case, Investigator Scott's application for the search warrant was conditioned on the delivery of the packages to the apartment: "Your affiant is aware that the above described packages and contents will be delivered to 4817 N 66th St. #131. Omaha, Nebraska. Upon the delivery your affiant requests the validation of a warrant for the search of 4817 N 66th St. #131." It does not appear that the Affidavit and Application prepared by Scott were incorporated as part of the search warrant. While the better practice would have been to include anticipatory language in the search warrant itself, the omitted language is not strictly required by the Constitution. *See Tagbering*, 985 F.2d at 950.

In *United States v. Moetamedi*, 46 F.3d at 229, the Second Circuit adopted

the reasoning of *Tagbering*, [*United States v.*] *Bieri*, [21 F.3d 811, 815 n.3 (8th Cir.) (no need for incorporation or attachment of affidavit underlying anticipatory warrant as long as affidavit contains adequate legal description of property to be searched), *cert. denied*, 513 U.S. 878 (1994)], and [*United States v.*] *Bianco*, [998 F.2d 1112, 1116-17 (2d Cir. 1993), *cert. denied*, 511 U.S. 1069 (1994)] in concluding that an anticipatory warrant is valid even though it does not state on its face the conditions precedent for its execution, when (1) "clear, explicit, and narrowly drawn" conditions for the execution of the warrant are contained in the affidavit that applies for the warrant application, and (2) those conditions are actually satisfied before the warrant is executed.

In the case at bar, the Application and Affidavit supplied by Investigator Scott provided the required conditions for execution of the warrant, and those conditions were actually satisfied before the warrant was executed.  Because there was no constitutional defect with respect to this search warrant, I will recommend that the Motion to Suppress (#11) be denied.

In the alternative, I find that the officers relied in good faith on the issuance of the search warrant and the search should be exempted from the exclusionary rule pursuant to *United States v. Leon*, 468 U.S. 897 (1984).  *See United States v. Tagbering*, 985 F.2d at 951; *United States v. Bieri*, 21 F.3d 811, 816 (8th Cir. 1994) (dicta).

### B.  Stop & Search of Vehicle

As discussed above, Investigator Lutter personally delivered the two DHL packages to the apartment.  Defendant accepted delivery and signed for the packages.  Lutter then left the apartment and conducted surveillance of the building.  Less than a minute after he exited the building Lutter saw defendant Harris leave the building, enter a Ford Expedition, and drive onto Fowler before turning southbound onto 66th Street, where the vehicle was stopped, at Lutter's direction, by Trooper Rasgorshek.  Rasgorshek removed Harris from the vehicle, handcuffed him, and placed him under arrest for receiving the package.  The Ford Expedition was searched incident to the arrest.

In this case, the defendant's vehicle was not stopped for a traffic violation.  Although there was no traffic violation, "[p]olice officers may make warrantless arrests when they have probable cause to believe a person has committed a felony."  *United States v. Travis*, 993

F.2d 1316, 1323 (8th Cir.), *cert. denied*, 510 U.S. 889 (1993) (citing *United States v. Watson*, 423 U.S. 411 (1976)); Neb. Rev. Stat. § 29-404.02(1). "Probable cause exists when officers possess information that would 'warrant a prudent man in believing that the [suspect] had committed or was committing an offense.'" *Id*. (quoting *Beck v. Ohio*, 379 U.S. 89, 91 (1964)). "In making this determination, the court may consider the collective knowledge of all officers involved." *United States v. Morgan*, 997 F.2d 433, 435 (8th Cir. 1993).

Here, the defendant was stopped and arrested after accepting delivery of two packages known to contain illegal substances. I find that the officers had probable cause to believe the defendant had committed a felony offense. Hence, his arrest did not violate the Fourth Amendment.

Under *New York v. Belton*, 453 U.S. 454, 460 (1981), "when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." "[T]he police may also examine the contents of any containers found within the passenger compartment, for if the passenger compartment is within reach of the arrestee, so also will containers in it be within his reach." *Id*. *See also United States v. Wells*, 347 F.3d 280 (8th Cir. 2003), *cert. denied*, 541 U.S. 1081 (2004); *United States v. Orozco-Castillo*, 404 F.3d 1101 (8th Cir. 2005).

The record shows that defendant's cell phone and keys were seized from the passenger compartment of his vehicle (36:3-5). I find that these items were legally seized incident to defendant's arrest.

## RECOMMENDATION

For the reasons discussed herein,

**IT IS RECOMMENDED** that defendant's Motions to Suppress (Filings 9 & 11) be denied.

Pursuant to NECrimR 57.3, a party may object to this Report and Recommendation by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten (10) days after being served with the recommendation. The statement of objection shall specify those portions of the recommendation to which the party objects and the basis of the objection. The objecting party shall file contemporaneously with the statement of objection a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.

**DATED October 31, 2005.**

                    **BY THE COURT:**

                    **s/ F.A. Gossett**
                    **United States Magistrate Judge**